**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

JESSICA OLIVER                                          CIVIL ACTION

VERSUS                                                  22-356-SDD-RLB

MILITARY DEPARTMENT,
STATE OF LOUISIANA, ET AL.

<u>**RULING**</u>

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] by the Military Department, State of Louisiana ("Military Department") and the *Motion to Dismiss for Failure to State a Claim and Pursuant to Rule 12(b)(1)*[2] by Lt. Colonel Jackie Manton ("Manton") in his official capacity, Jeff Landry, in his official capacity as Attorney General for the State of Louisiana ("the AG"), and State of Louisiana, Division of Administration, Office of Risk Management ("ORM")(or collectively "State Defendants"). Plaintiff, Jessica Oliver ("Plaintiff" or "Oliver") filed an *Opposition* to each motion,[3] and Manton, the AG, and ORM filed a *Reply*.[4] Also before the Court is Plaintiff's *Motion to Strike Answer to Complaint*[5] by Plaintiff, to which Military Department filed an Opposition.[6] For the following reasons, the *Motions* by all Defendants shall be granted, and Plaintiff's *Motion to Strike* shall be denied.

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 37.
[3] Rec. Docs. 39-1, 43.
[4] Rec. Doc. 45.
[5] Rec. Doc. 42.
[6] Rec. Doc. 44.

I.     **BACKGROUND**[7]

On April 20, 2022, Plaintiff filed the instant lawsuit in Louisiana state court, alleging "discrimination based on retaliation, disability, and sexual orientation in violation of Title [VII] of the Civil Rights Act of 1964."[8] Plaintiff alleged she became employed by the Military Department on December 6, 2020 as an Assistant Commandant of the Job Challenge Program located at the Gillis W. Long Center.[9]  However, because the Plaintiff further alleges that she was informed of an internal investigation on February 20, 2020 and was ultimately terminated on or about April 28, 2020,[10] the Court assumes that the alleged start date of December 6, 2020 is a typographical error.  Plaintiff claims that she was "victimized of her sexual orientation after acknowledging in conversation to the then Director of JCP, LTC Jackie Manton on or around February 5, 2020."[11] Plaintiff further claims that, after his conversation with Manton, "indirectly through co-workers she was told there was an open investigation relative to favoritism she shown to a female trainee, including an alleged relationship."[12]

On April 21, 2022, the Military Department removed this suit to the United States District Court for the Eastern District of Louisiana,[13] and the matter was subsequently transferred to this Court.[14] On June 30, 2022, Plaintiff filed a *Motion for Leave to File*

---

[7] The Court notes that Plaintiff's *Complaints* and her briefs submitted on these motions contain numerous spelling and grammatical errors. The Court quotes from Plaintiff's pleadings and briefs exactly as submitted, without correction.

[8] Rec. Doc. 1-2. Plaintiff alleges these claims fall under Title VIII; the Court assumes this is a typographical error.

[9] Rec. Doc. 1-2, ¶ 6.  The Military Department notes: "Plaintiff has named the State of Louisiana National Guard Youth Program as a defendant, which is not a separate legal entity. The Louisiana National Guard is part of the Military Department. *See* La. R.S. 29:1. Therefore, the Military Department includes the Louisiana National Guard." Rec. Doc. 32-1, p. 1 fn 1.

[10] Rec. Doc. 1-2, ¶¶ 6, 9.

[11] *Id*. at ¶ 7.

[12] *Id*. at ¶ 9.

[13] Rec. Doc. 1.

[14] Rec. Docs. 10 & 11.

*Amended Complaint*,[15] which the Court granted. In her *Amended Supplemental Complaint*,[16] Plaintiff added new parties and claims.  Plaintiff named as Defendants Manton, the AG, and the ORM.  Plaintiff added claims of violations of the First and Fourteenth Amendments to the United States Constitution and the Equal Protection Clause, purportedly under 42 U.S.C. § 1983; employment discrimination claims under the Louisiana Employment Discrimination Law ("LEDL"), including retaliation, harassment, hostile work environment, and constructive discharge;[17] and a host of other state law claims, including intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), breach of warranty, breach of contract, misrepresentation, fraud, negligence, coercion, defamation, and *respondeat superior* (vicarious liability).

## II.    Plaintiff's *Amended Supplemental Complaint*

All Defendants move to dismiss Plaintiff's claims; however, there appears to be confusion as to whether Plaintiff's *Amended Supplemental Complaint* is the operative complaint, replacing and superseding the original complaint, or whether it is supplemental to the original, and all allegations remain before the Court.  Plaintiff maintains that the *Amended Supplemental Complaint* is supplemental to the original and is to be read in conjunction therewith.

Defendants rely on Rule 10(a)(5) of the Local Rules for the Middle District of Louisiana, which provides:

> An amended complaint will supersede any prior filed complaint. Except to the extent that adoption by reference is permitted under Fed. R. Civ. P. 10(c), an amended complaint shall set forth amended allegations and fully restate all other allegations against all parties.

---

[15] Rec. Doc. 21.
[16] Rec. Doc. 26.
[17] La. R.S. 23:301 *et seq*.

However, Rule 10(c) of the Federal Rules of Civil Procedure states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."

In Paragraph XXII of Plaintiff's *Amended Supplemental Complaint*, Plaintiff states that "this amended, supplemental complaint is supplemental to those complaints originally served and answered by Defendant and would adopt into the prior complaints for damages as if restated herein." The Fifth Circuit, in *Carroll v. Fort James Corp.*, held that the Federal Rules of Civil Procedure allow for incorporation by reference when the incorporation is done with a degree of specificity which would allow the opposing party to determine what parts were incorporated.[18]  In *Carroll*, the plaintiff's amended complaint contained a blanket incorporation clause, similar to the Plaintiff's herein, and the Court held it sufficient to satisfy the specificity requirement.[19] Thus, Plaintiff's *Amended Supplemental Complaint* meets the exception set forth in Local Rule 10(a)(5), and all claims in the original and supplemental complaint are before the Court.  Nevertheless, none of Plaintiff's claims are viable as pled.

III.    **LAW & ANALYSIS**

    A.  **Motion to Strike Amended Complaint**

The Military Department filed an *Answer* to Plaintiff's original *Complaint* and asserted several affirmative defenses to her claims.[20] After filing her *Amended Supplemental Complaint*, Plaintiff moved to strike the Military Department's *Answer*, arguing its affirmative defenses should be stricken from the record.[21]

---

[18] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006).
[19] *Id.*
[20] Rec. Doc. 4.
[21] Rec. Doc. 42.

Federal Rule of Civil Procedure 12(f) states, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[22] Motions to strike are generally disfavored and generally require the moving party to show prejudice.[23] The Fifth Circuit has cautioned: "If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied."[24]

The Court has reviewed the affirmative defenses asserted by the Military Department and the arguments presented by the Parties.  The Court finds that the affirmative defenses asserted are typical and appropriate given the claims Plaintiff brings. Plaintiff has offered nothing to demonstrate that the affirmative defenses could not be supported by developed facts, nor has she shown that the defenses are impossible, immaterial, scandalous, or any way prejudicial.  Plaintiff's arguments regarding the affirmative defenses are more appropriately responsive to a motion to dismiss.

In some specific instances, Plaintiff's arguments are clearly contrary to applicable law.  For example, the Military Department's Fourth Affirmative Defense states that Plaintiff's claims "were filed in the improper state venue and were not timely served upon the Military Department in violation of 42 U.S.C. § 2000e-5(f)(1) and Louisiana Civil Code article 3426.  Thus, although removal to this Court was proper pursuant to 28 U.S.C. § 1441(a), this Court is not a proper venue under 28 U.S.C. § 1391(b)."[25]  Plaintiff moves to strike this defense as moot because the Military Department removed the matter to federal court.  However, as the Military Department counters, "[a] party who removes an

---

[22] Fed. R. Civ. Pro. 12(f).
[23] *Barnes v. Vanoy*, No. CV 19-764-JWD-RLB, 2020 WL 8513200, at *1 (M.D. La. Dec. 2, 2020).
[24] *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424 (5th Cir. 1962), n 13.
[25] Rec. Doc. 44, p. 7.

action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action."[26]

Plaintiff has failed to carry her burden to demonstrate that the affirmative defenses asserted by the Military Department should be stricken under Rule 12(f); therefore, the *Motion to Strike Answer to Complaint*[27] is DENIED.

### B. Motion to Dismiss under Rule 12(b)(1)

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[28] If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'"[29] The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'"[30]

### C. Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[31] The court may consider "the complaint, its proper attachments, documents incorporated into the

---

[26] *Burks v. Aloca, Inc.*, No. Civ.A.01-3738, 2002 WL 32859, at *2 (E.D. La. Jan. 9, 2002).
[27] Rec. Doc. 42.
[28] *Crenshaw–Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); s*ee also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); Fed. R .Civ. P. 12(h)(3)).
[29] *Id.* at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)).
[30] *Id.* (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Ramming*, 281 F.3d at 161).
[31] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

complaint by reference, and matter of which a court may take judicial notice."[32] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[33] In *Bell Atlantic Corp. v. Twombley*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[34] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[35] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[37] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[38] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[39] Rather, the inquiry is whether the allegations in the complaint plausibly state a claim for relief.

---

[32] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

[34] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) [hereinafter *Twombly*].

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) [hereinafter *Iqbal*].

[36] *Twombly*, 550 U.S. at 556.

[37] *Iqbal*, 556 U.S. at 678.

[38] *Taha v. William Marsh Rice University*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[39] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### D.  Sovereign Immunity

All Defendants assert the defense of sovereign immunity as to Plaintiff's Section 1983 constitutional claims. It is undisputed that the Military Department is part of the executive branch of the State of Louisiana.[40]  The ORM is also an arm of the State, and AG Landry and Manton have been sued in their official capacities only; thus, these Defendants also move for dismissal of these claims based on sovereign immunity. Plaintiff has failed to address this argument in either *Opposition*, focusing instead on standing, supplemental jurisdiction over state law claims, and qualified immunity – none of which are at issue in the pending motions to dismiss, nor are they responsive to the defense of sovereign immunity.  Further, these Defendants are entitled to dismissal of Plaintiff's federal constitutional claims as a matter of law.  As explained by another section of this Court in *White Hat v. Landry*:

> "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, [t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984). (citations and quotations omitted). Accordingly, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id*. (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7, 99 S. Ct. 1139, 59 L.Ed. 2d 358 (1979)).[41]

However, it is also "an established principle of law that generally, a state defendant waives sovereign immunity under the Eleventh Amendment when it removes a case from state

---

[40] La. R.S. 29:1.
[41]  475 F.Supp.3d 532, 547 (M.D. La. 2020)

to federal court."[42]  Thus, the Military Department's removal of this suit to federal court constituted a waiver of the State of Louisiana's sovereign immunity to suit in federal court.[43]  But the inquiry does not end here.

The Fifth Circuit has held "that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts."[44] As explained by another section of this Court, "Louisiana's removal to federal court waived its immunity *from suit* in regards to the official capacity § 1983 claims, but the State may still prove that it has immunity *from liability* on these claims."[45] While "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law[;]"[46] according to the Fifth Circuit, "[t]he Supreme Court has held that a State is not a person against whom a § 1983 claim for money damages might be asserted."[47]  Additionally, "[t]his rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'"[48]

---

[42] *Price v. Louisiana,* Civ. A. No. 16-402-BAJ-EWD, 2017 WL 151394, at *2 (M.D. La. Jan. 13, 2017) (citing *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) (citing *Lapides v. Bd. of Regents of University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002))).

[43] *Williams v. Louisiana*, Civ. A. No. 17-453-JWD-EWD, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019).

[44] *Meyers ex rel. Benzing v. Texas*, 454 F.3d 503, 504 (5th Cir. 2006).

[45] *Williams*, 2019 WL 1003645 at *4 (emphasis in original).

[46] *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983).

[47] *Med RX/Systems, P.L.L.C. v. Texas Dept. of State Health Servs.*, 633 Fed. Appx. 607, 610 (5th Cir. 2016) (quoting *Lapides v. Bd. of Regents of University System of Georgia*, 535 U.S. 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)) (internal quotation marks omitted).

[48] *Id.* (quoting *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

In this matter, Plaintiff seeks no injunctive or declaratory relief, only monetary damages. She also concedes that she has only sued the state officials/agencies in their official capacities and as arms of the State of Louisiana:

> Although, in reference to our second Amended Complaint added Lt. Col Manton, Hon. Jeff Landry in their official capacity, if it would not cause Oliver any problems. I would be willing to dismiss them from the complaint.[49]

> As the government entity, the Military Department is defendant in this litigation, it is unnecessary to name a specific individual, Lt. Col. Jackie Manton, as a defendant in his official capacity. Lt. Col. Jackie Manton, Attorney General Jeff Landry, and the State of Louisiana, Division of Administration, Office of Risk Management are all sued in their official capacity.[50]

Thus, while Defendants are not immune from suit in federal court based on the Military Department's removal, they are immune from liability on Plaintiff's Section 1983 claims under applicable state and federal law. Accordingly, Plaintiff's Section 1983 federal constitutional claims asserted against the State of Louisiana, the Military Department, the ORM, AG Landry, and Manton are dismissed with prejudice.[51]

### E. Title VII Claims

Although vague, it appears from Plaintiff's *Complaints* that she asserts claims of discrimination, hostile work environment, retaliation, and constructive discharge under Title VII. The Court will address the sufficiency of the allegations in Plaintiff's *Complaints* for each of these claims.

---

[49] Rec. Doc. 43, p. 2.
[50] *Id.* at p. 11.
[51] The Court also notes that, while the ORM and AG Landry are subject to dismissal based on sovereign immunity, Plaintiff adds these Defendants in her supplemental complaint but makes no factual allegations as to either Defendant connecting them in any way to her claims.

1.  <u>Discrimination Based on Sexual Orientation</u>

Plaintiff alleges she was terminated based on revealing her sexual orientation – that she is gay.  Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing]" against any individual with respect to employment "because of such individual's ... sex."[52] In *Bostock v. Clayton County*, the United States Supreme Court held that discrimination on the basis of sexual orientation or gender identity is a form of sex discrimination under Title VII.[53]  The Fifth Circuit instructs:

> At the Rule 12(b)(6) stage, our analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *Swierkiewicz*, we have explained, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).
>
> But "[a]lthough [a plaintiff does] not have to submit evidence to establish a prima facie case of discrimination [under *McDonnell Douglas*] at this stage, he [must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). And when a plaintiff's Title VII disparate treatment discrimination claim depends on circumstantial evidence …, the plaintiff "will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework." *Cicalese*, 924 F.3d at 767 (quoting *Chhim*, 836 F.3d at 470). "In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id*. (quoting *Chhim*, 836 F.3d at 470).
>
> Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. Specifically, a plaintiff must allege facts sufficient to support a finding "that he was treated less favorably than others outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017).[54]

---

[52] 42 U.S.C. § 2000e-2(a)(1).

[53] —— U.S. ——, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020).

[54] *Olivarez v. T-mobile USA, Incorporated*, 997 F.3d 595, 599-600 (5th Cir. 2021).

In her *Complaints*, Plaintiff alleges that she was terminated (or constructively discharged) by the Military Department; thus, she has properly alleged that she was a member of a protected class and that she suffered an adverse employment action. However, Plaintiff has failed to plead any facts suggesting she was treated less favorably than others "similarly situated" outside the protected class. The *Complaints* are devoid of any allegations that any non-gay employees in her same position, with the same supervisor and job duties, were treated differently than she under the same circumstances – an employer's investigation into complaints of Plaintiff's alleged improper relationship with subordinates. Thus, Plaintiff has failed to plead facts that would permit a reasonable inference that she was discriminated against because of her sexual orientation. Accordingly, Plaintiff's Title VII discrimination claim is dismissed without prejudice.

2. Hostile Work Environment[55]

In her *Amended Supplemental Complaint*, Plaintiff alleges that she suffered "harassment while on the job in the form of rumors, false allegations and defamation of character."[56] Plaintiff contends that she suffered a hostile work environment under state law,[57] but it is unclear if Plaintiff claims a hostile work environment under Title VII. Out of an abundance of caution, the Court will address Plaintiff's hostile work environment claim under Title VII.

---

[55] In her *Oppositions*, Plaintiff appears to blend her Title VII and Section 1983 hostile work environment arguments; however, the Court has dismissed Plaintiff's federal constitutional claims based on sovereign immunity, and, in any event, Plaintiff has not pled claims for supervisory liability under Section 1983.
[56] Rec. Doc. 43, ¶ VIII.
[57] *Id.* at ¶ XIV.

To establish a *prima facie* case of a hostile work environment, a plaintiff must prove (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sexual orientation; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[58] Harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[59] Failure to allege facts in the complaint that demonstrate a severe or pervasive work environment strong enough to alter the conditions of the plaintiff's employment is fatal to a plaintiff's claim.[60]

In opposing the Military Department's motion, Plaintiff argues that she was subjected to a hostile work environment

> because she was gay (adverse employment act; pretextual; investigations; lack of proper training in payroll).  The harassment complained of in the instant case is sexual orientation and pretext termination certainly affected a term and condition and privilege of her employment. The state defendant was not interested in remedial action."[61]

Plaintiff's other arguments relating to hostile work environment are not relevant or responsive to Defendants' motions.  Plaintiff discusses the Military Department's affirmative defenses, the mental damages she allegedly suffers as a result of the alleged harassment, administrative exhaustion as a jurisdictional bar (an issue not raised), her

---

[58] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[59] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993).
[60] *Perez v. Brennan*, 766 Fed. Appx. 61, 64-65 (5th Cir. 2019); *Whitlock v. Lazer Spot, Inc.*, 657 Fed. Appx. 284, 287 (5th Cir. 2016); *Stone v. Louisiana Dept. of Revenue*, 590 Fed. Appx. 332, 340-41 (5th Cir. 2014).
[61] Rec. Doc. 39-1, p. 3.

purported Section 1981 claims (such a claim is not alleged), and jurisprudence related to the standard for discrimination – not hostile work environment – under Title VII.[62]

In opposing the State Defendants' motion, Plaintiff cites jurisprudence discussing what kind of conduct constitutes a hostile work environment and ultimately argues:

> A hostile environment claim challenges workplace practices rather than tangible job benefits and consists of verbal or physical conduct of a sexual nature that unreasonably interferes with the employee's work or creates an intimidating, hostile or offensive working environment. This type of harassment is both more pervasive and more elusive, it fills the air with a tense combination of lust and contempt. Although quid pro quo sexual harassment can only be committed by someone with authority to change the employee's job status, employers, supervisors, coworker. "the whole place was talking about my sexual preference" she was denigrated in front of other employees and monitored very closely; she asked for more training but never got it all this affected her for performance.[63]

> .  .  .

> She was subjected repeatedly to abusive conduct direct at her because of her gender and sexual orientation (accused of favoritism with females and males. Oliver was subjected to and offended by this harassment because of her sexual orientation. The sexual harassment affected a term, condition or privilege of her employment by creating an abusive work environment that affected psychological and/or physical wellbeing. Oliver gave notice to Lt. Col Manton of the above. The employer failed to take remedial action in response but instead terminated her. The plaintiff was not terminated for poor work performance but because of sexual harassment that lead to poor work performance.[64]

Assuming *arguendo* that these claims would satisfy Rule 12(b)(6), these allegations appear nowhere in Plaintiff's *Complaints*.

The Court finds Plaintiff's allegations insufficient to support a claim for Title VII hostile work environment.  First, any arguments or assertions of facts in Plaintiff's *Oppositions* that are not pled in her *Complaints* are not properly before the Court.

---

[62] *Id.* at pp. 3-5.
[63] Rec. Doc. 43, pp. 4-5.
[64] *Id.* at pp. 10-11.

"[A]rguments of counsel in a brief are not a substitute for properly pleaded allegations, and 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'"[65]    Accordingly, to the extent Plaintiff asserts a Title VII hostile work environment claim, it is dismissed without prejudice.

### 3. Retaliation

To state a claim for retaliation under Title VII, a Plaintiff must allege facts that would demonstrate that "'1) [s]he participated in an activity protected by Title VII; (2) h[er] employer took an adverse employment action against h[er]; and (3) a causal connection exists between the protected activity and the adverse employment action.'"[66] Under Title VII, a "protected activity" is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[67]  Thus, Title VII contemplates two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").[68]

---

[65] *Mocsary v. Ard*, No. 17-1713-SDD-EWD, 2018 WL 4608485, at *11 (M.D. La. Sept. 25, 2018)(quoting *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012)).

[66] *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 678 (5th Cir. 2021)(quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)).

[67] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).

[68] *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009).

Plaintiff has failed to plead a Title VII retaliation claim as her *Complaints* are devoid of any allegations suggesting that she participated in protected activity under the opposition clause or the participation clause, or that a causal connection exists between such protected activity and her termination.  Plaintiff makes only passing references to retaliation in both *Complaints*:

> Petitioner further avers because of the conversation had she was discriminated against and the subject of retaliation that caused negative consequences leading to termination despite Defendant characterizing her insubordination as grounds for termination.[69]

> Jessica Oliver avers that the Defendants are liable unto her under state law for: …retaliation …[70]

Plaintiff has not alleged that she engaged in protected activity under Title VII under either the opposition or participation clauses, and she makes no allegations that any sort of protected activity under Title VII is connected to her termination.  While it is clear from Plaintiff's allegations that she participated in the investigation into the alleged conduct reported against her, considering that she was questioned by Manton about the same, Plaintiff does not allege facts from which an inference could be drawn that this participation constituted the type of protected activity covered, or that this participation was the reason for her termination.

As mentioned above, any arguments or newly offered facts relating to her retaliation claims that appear in her *Opposition* briefs are not properly pled.  Moreover, Plaintiff's arguments are legally unsupported and non-responsive to the basis for Defendants' motions.  Plaintiff focuses on the adverse employment action prong, arguing

---

[69] Rec. Doc. 1-2, ¶ 11.
[70] Rec. Doc. 26, ¶ XIV.

that "[t]he formation is an adverse employment action of discrimination and retaliation."[71]

Not only does this statement make no sense, Defendants have not argued that Plaintiff did not suffer an adverse employment action in this matter.  Plaintiff continues:

> The anti-discrimination provision of Title VII of the Civil Rights Acts of 1964 seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are [i1]. The anti-retaliation provision seeks to prevent harm to individuals based on what they do.[2] The anti-retaliation provision, unlike the substantive, is not limited to discriminatory actions that affect the terms and conditions of employment. United State Court of Appeals for the Fifth Circuit precedent recognizing only ultimate employment decisions as actionable adverse employment actions remains controlling for Title VII discrimination claims.
>
> The investigation of the sexual relationship yield nothing; neither did the favoritism so, above were both protected activities.
>
> An employee has engaged in activity protected by Title VII of the Civil Rights Act of 1964 if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.
>
> Oliver is member of a protected group (gay)[.][72]

The foregoing paragraphs are unsupported by citation to any legal authority and do not respond to the applicable legal standard set forth above for Title VII retaliation. Plaintiff's argument suggests that, because the Military Department's investigation into her conduct "yield[ed] nothing," her termination was retaliatory. However, there are no allegations in her *Complaints* that being the subject of an investigation constituted "participating in" protected activity or "opposing" protected activity.  The Court is called

---

[71] Rec. Doc. 39-1, p. 2.
[72] *Id.*

upon to test the sufficiency of the pleadings, alone. Plaintiff has failed to state a claim for Title VII retaliation. Accordingly, Plaintiff's Title VII retaliation claim is dismissed without prejudice.

### 4. Constructive Discharge

A plaintiff asserting a constructive-discharge claim must allege (1) "that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] potion would have felt compelled to resign[,]" and (2) "that [s]he actually resigned."[73] Plaintiff has made no allegation that she felt forced or compelled to resign; rather, she repeatedly alleges that she was terminated.[74] Although Plaintiff includes, for the first time, an allegation that she was constructively discharged in her *Amended Supplemental Complaint*,[75] it is unaccompanied by any factual allegations to support a claim for constructive discharge, and Plaintiff consistently argues in her *Oppositions* that she was terminated.[76]  Accordingly, Plaintiff's constructive discharge claim is dismissed without prejudice.

### F.    Americans with Disabilities Act ("ADA") Claim[77]

A lone reference to disability discrimination is made in the opening paragraph of Plaintiff's original *Complaint*: "… seeking to recover damages for discrimination based on retaliation, disability, and sexual orientation in violation of Title VIII[78] of the Civil Rights Act of 1964 … ."[79]  First, disability discrimination is not actionable under Title VII.  Second, Plaintiff never mentions the ADA or the Louisiana counterpart.  Plaintiff does not even

---

[73] *Green v. Brennan*, 578 U.S. 547, 555, 136 S. Ct. 1769, 195 L.Ed.2d 44 (2016).
[74] *See* Rec. Doc. 1-2, ¶¶ 9, 11.
[75] Rec. Doc. 26, ¶ XIV.
[76] Rec. Doc. 39-1, pp. 3, 6, 8, 9, 15, 17, 20; Rec. Doc. 43, pp. 10, 11, 16.
[77] 42 U.S.C. § 12112(a).
[78] The Court assumes this is a typographical error.
[79] Rec. Doc. 1-2, p. 1.

allege that she is a qualified individual with a disability, or that she is disabled as defined by the controlling statutes – the first step to establishing any federal or state disability discrimination claim.[80]    Further, Plaintiff does not address any claim for disability discrimination in her *Oppositions*. Accordingly, Plaintiff's disability discrimination claim is dismissed with prejudice.

### G.    Louisiana Employment Discrimination Law ("LEDL")

Plaintiff alleges the Defendants are liable to her under state employment law for discrimination, hostile work environment, retaliation, and constructive discharge.[81]   All Defendants move for dismissal of Plaintiff's LEDL claims, arguing that Louisiana does not recognize sexual orientation as a protected class.   Defendants rely on the decision in *Louisiana Dep't of Just. v. Edwards*, wherein the First Circuit Court of Appeal of Louisiana held that the LEDL does not prohibit discrimination of sexual orientation: "the Louisiana Legislature and the people of the State of Louisiana have not yet revised the laws and/or the state Constitution to specifically add 'sexual orientation' or 'gender identity' to the list of protected persons relating to discrimination."[82]   This case remains good law. Plaintiff fails to respond to this argument in either *Opposition* brief.

Further, if Louisiana *did* recognize sexual orientation as a protected class, Plaintiff's claims under the LEDL would still be subject to dismissal based on the findings discussed above as to these claims under Title VII because claims under the LEDL are analyzed under the Title VII framework and jurisprudence.[83] Accordingly, Plaintiff's LEDL

---

[80] *See United States Equal Employment Opportunity Commission v. Mid South Extrusion Inc.*, 341 F.Supp.3d 653, 659 (W.D. La. 2018)(citations omitted); *see also, Conine ex rel. Estate of Addie v. Universal Oil Products Co.*, 42,409 (La. App. 2 Cir. 926/07), 966 So.2d 763, 766-67; La. R.S. 23:323.
[81] Rec. Doc. 43-2, ¶ XIV.
[82] 2017-0173 (La. App. 1 Cir. 11/1/17), 233 So.3d 76, 81.
[83] *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 701 (E.D. La. 2012) (Africk, J.) ("[f]ederal courts look to Title VII jurisprudence to interpret the LEDL.").

claims are dismissed with prejudice.

### H. Prescribed State Law Tort Claims/Vicarious Liability Claim

Plaintiff alleges Defendants committed the following state law torts, all of which are subject to a one-year prescriptive period: IIED,[84] NIED,[85] fraud,[86] misrepresentation,[87] defamation,[88] coercion,[89] and general negligence under Louisiana Civil Code article 2315.[90] Plaintiff's employment ended on April 28, 2020. Plaintiff filed this lawsuit in state court on April 20, 2022, nearly two years after her termination. Thus, the above listed claims are prescribed on the face of the *Complaints*.

Additionally, "[t]he Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal."[91] "By analogy, failure to brief an argument in the district court waives that argument in that court."[92] Thus, Plaintiff has also abandoned several of these claims by failing to address them in her *Oppositions*. Plaintiff fails to mention or meaningfully address the following

---

[84] *Lanzas v. Am. Tobacco Co., Inc.*, 46 F.App'x. 732 (5th Cir. 2002).

[85] *Id.*

[86] *Id.*

[87] *Hunt Guillot & Assocs., LLC v. Clark*, 53,434 (La. App. 2 Cir. 4/22/20), 293 So.3d 1278, 1283.

[88] *Jeansonne v. Bonano*, 2017-0828 (La. App. 1 Cir. 1/23/18), 241 So.3d 1027, 1032.

[89] *Damond V. Marullo*, 2019-0675 (La. App. 1 Cir. 6/22/20), 307 So.3d 234, 240, *writ denied sub nom. Damond v. Marullo*, 2020-01243 (La. 3/23/21), 312 So.3d 1104.

[90] *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 478 (5th Cir. 2002).

[91] *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (citations omitted)); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation ... is a failure to brief and constitutes waiver").

[92] *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *see also Kellam v. Metrocare Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. CIV. A. H-10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument). *See also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia, JMCB*, 336 F. Supp. 3d at 634)).

claims in her briefs: fraud, NIED, general negligence (including duty and breach), misrepresentation, and defamation.  In one brief, Plaintiff discusses coercion, arguing that Manton "coerced" subordinates "to write statements against Oliver,"[93] but she fails to address the basis for Defendants' motion to dismiss that claim, *i.e.*, that Plaintiff lacks standing to assert a claim for coercion that allegedly happened to others.

Plaintiff contends her IIED claim is not time-barred because the continuing violations doctrine, also referred to as the continuing tort doctrine, applies to this claim.  However, Plaintiff misunderstands the law.  Plaintiff argues:

> Here, the gravamen of Plaintiff's IIED claim concerns the state labeling a problem and a nuisance on a daily basis for over 3 years, as well as other acts that overlay with her hostile work environment claims. Thus, the Court may apply a continuing violations theory and consider events occurring throughout the entire time period during which Plaintiff alleges she was harassed resulting in IIED.[94]

However, there is no allegation that any harassing conduct took place beyond April 28, 2020, or within one year of her filing date of April 20, 2022.  The continuing violations doctrine does not apply to Plaintiff's IIED claim.

The Louisiana Supreme Court has explained that "[t]he continuing tort doctrine is an exception to La. C.C. art. 3492 that applies when continuous tortious conduct causes continuing damages."[95]  For the continuing tort doctrine to apply, three requirements must be met—a continuing duty owed to the plaintiff, a continuing breach of that duty by the defendants, and a continuing injury or damages that arises day to day.[96]  "'The inquiry is

---

[93] Rec. Doc. 39-1, p. 13.
[94] *Id.* at p. 7.
[95] *Alexander v. La. State Board of Private Investigator Examiners*, 2015-0537 (La. App. 4 Cir. 2/17/17), 211 So.3d 544, 557 (citing *Crump v. Sabine River Authority*, 98-2326, p. 10 (La. 6/29/99), 737 So.2d 720, 728; *Bustamento v. Tucker*, 607 So.2d 532, 542 (La. 1992)).
[96] *Id.* (citation omitted).

essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts.'"[97] If the alleged injury-causing conduct terminates, there is no continuing tort, even if the plaintiff continues to experience injury in the absence of any ongoing activity by the tortfeasor.[98] "'Both conduct and damage must be continuous' for the continuing tort doctrine to apply."[99]

Plaintiff has not alleged that the purported harassing or tortious conduct persisted beyond her termination date or that any conduct was committed within a year of Plaintiff filing suit; thus, Plaintiff's IIED claim is prescribed.  As set forth above, even though the Plaintiff may have continued to suffer the alleged damage from the tortious conduct, the continuing violations doctrine does not apply unless *both* the tortious conduct and the resulting damage are continuous. Thus, Plaintiff's IIED claim is prescribed.

Accordingly, Plaintiff's IIED, NIED, fraud, misrepresentation, defamation, coercion, and general negligence claims are dismissed with prejudice as they are prescribed and/or waived. Further, because none of Plaintiff's state law tort claims are viable, Plaintiff's vicarious liability claim is likewise dismissed with prejudice.

## I.    Breach of Warranty/Breach of Contract Claims

Finally, Plaintiff has asserted claims for "breach of warranty and/or contract"[100] in her *Amended Supplemental Complaint*.  As with several of Plaintiff's state law tort claims, Plaintiff has abandoned any warranty claim by failing to address Defendants' motion to dismiss this claim in her *Oppositions.* Plaintiff's warranty claim is therefore dismissed with

---

[97] *Id.* (quoting *Hogg*, 09–2632, 09–2635 at p. 16, 45 So.3d at 1003).
[98] *Id.* (quoting *Hogg*, 09–2632, 09–2635 at p. 16, 45 So.3d at 1003).
[99] *Id.* (quoting *Risin v. D.N.C. Investments, L.L.C.*, 05-0415, p. 8 (La. App. 4 Cir. 12/7/05), 921 So.2d 133, 138).
[100] Rec. Doc. 26, ¶ XV.

prejudice.

The Defendants seek dismissal of Plaintiff's breach of contract claim because Plaintiff asserts no factual allegations as to any contract she entered into with any Defendant. Plaintiff counters:

> Plaintiff has sufficiently alleged the elements of breach of contract. As to the first element, Plaintiff alleges that, on 12/06/18, the defendant undertook an obligation- an employment contract- requiring it to pay Plaintiff a set salary, even in the event of her removal for cause. As for the second element, Plaintiff alleges that, on 4/28/20, the state defendant failed to perform its obligation by terminating; Plaintiff's pay in response to her removal for cause. Finally, considering the third element, Plaintiff alleges that she has suffered at least $200,000 in damages as a result of this breach. Because Plaintiff has sufficiently pleaded all required elements, the court must not dismiss her claim.[101]

However, none of these factual allegations appear in Plaintiff's *Complaints*.

"By its nature, the relationship between an employee and her employer is contractual."[102] However, in Louisiana, "an employment relationship is 'at will' unless the parties expressly agree otherwise."[103] Where an employee is "at will," "[a] claim for wrongful termination of the contract is futile."[104] Further, "[t]o state a claim for breach of contract under Louisiana law, 'a plaintiff must allege a breach of a specific provision of the contract.'"[105]

The allegations in Plaintiff's *Complaints* do not state: (1) that a contract exists between herself and Defendants; (2) the nature of her employment as being "at will" or

---

[101] Rec. Doc. 39-1, pp. 8-9.

[102] *Hunter v. Jefferson Parish Public School System*, No. 17-2015, 2017 WL 4619741, at *7 (E.D. La. Oct. 13, 2017)(citing *Central Healthcare Servs. v. Schwing*, No. 09-4289, 2009 WL 4060468, at *2 (E.D. La. Nov. 20, 2009) (citing *Hundson v. Allstate Ins. Co.*, 169 So.2d 598, 602 (La. App. 2nd Cir. 1964))).

[103] *Schwing*, 2009 WL 4060468, at *2 (citing *Finkle v. Majik Market*, 628 So.2d 259, 262 (La.Ct.App.1993)("Where there is no specific contract between the employee and employer, the employee is at-will and may be terminated for any reason, at any time....")).

[104] *Id.*

[105] *Barbe v. Ocwen Loan Servicing, LLC*, 383 F.Supp.3d 634, 643 (E.D. La. 2019)(quoting *Blackstone v. Chase Manhattan Mortgage Corp.*, 802 F.Supp.2d 732, 738 (E.D. La. 2011)).

pursuant to a written contract; or (3) any specific contract provision any Defendant breached. Even Plaintiff's claims quoted above, which are not alleged in any *Complaint*, do not satisfy the applicable standard. Nevertheless, the Court will dismiss Plaintiff's breach of contract claim without prejudice, with leave to amend if possible.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's *Motion to Strike Answer to Complaint*[106] is DENIED. The *Motion to Dismiss for Failure to State a Claim*[107] by the Military Department and the *Motion to Dismiss for Failure to State a Claim and Pursuant to Rule 12(b)(1)*[108] by the State Defendants are GRANTED as follows: Plaintiff's federal constitutional claims asserted pursuant to 42 U.S.C. § 1983 are dismissed with prejudice; Plaintiff's Title VII claims are dismissed without prejudice; Plaintiff's ADA claim is dismissed with prejudice; Plaintiff's LEDL claims, claims of IIED, NIED, fraud, misrepresentation, defamation, coercion, general negligence, and warranty are dismissed with prejudice. Plaintiff's breach of contract claim is dismissed without prejudice. For the same reasons set forth herein, Plaintiff's *Motion for Judgment on the Pleadings (12(C))*[109] is DENIED.

Plaintiff shall be given a final opportunity to amend her *Complaint* to cure the deficiencies addressed herein. Plaintiff is granted leave to amend only as to the claims dismissed WITHOUT prejudice. Plaintiff is not granted leave to add new parties or new claims. Plaintiff shall file a superseding, comprehensive, amended complaint in accordance with Local Rule 10(a)(5) on or before April 12, 2023. The failure to file an

---

[106] Rec. Doc. 42.
[107] Rec. Doc. 32.
[108] Rec. Doc. 37.
[109] Rec. Doc. 49.

amended complaint within this time period will result in a dismissal of all claims WITH prejudice.[110]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 29th day of March, 2023.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[110] Counsel for Plaintiff is cautioned that, in the future, any pleadings or briefs submitted that contain numerous misspellings, typographical, and/or grammatical errors shall be stricken, and counsel shall be ordered to show cause why sanctions should not be imposed.  Plaintiff's briefs submitted in connection with the Motions to Dismiss are rife with misspelled words, incomplete sentences, grammatical errors including lack of punctuation, improper citations to jurisprudence, and, in some instances, incoherent and/or irrelevant arguments.  Rec. Doc. 39-1 is particularly egregious in this regard.  The briefs submitted are beneath the standard of professionalism expected by members of the federal bar.